We'll hear argument next in Case 16-349, Henson v. Santander Consumer USA, Inc. Mr. Russell. Mr. Chief Justice, and may it please the Court, the Fair Debt Collection Practices Act applies to debt collectors. Debt collector is defined in the Act as most relevant here to include individuals who regularly collect debts owed or due another. When Respondent Santander was originally hired to collect Petitioner's defaulted car loans, there's no question that it was collecting a debt owed or due another under anyone's interpretation of that term. The question in this case is whether that changed when Santander purchased an assignment of that debt. The Fourth Circuit held that it did, wrongly, based on its interpretation of the key phrase owed or due another, which is used twice in the definition of debt collector, once in the principle definition and again in the Clause F exceptions. The problem with that interpretation is that it cannot be squared with the use of the same exceptions, particularly with respect to Clause F-4. And I would, with the Court's indulgence, I would like to walk through that exception. And it's found on page 4A of the appendix to the blue brief. As I mentioned, this is an exception for somebody who otherwise qualifies as a debt collector under the main definition. There's somebody who is collecting a debt owed or due another. And that same requirement is repeated at the beginning of Clause F. There has to be somebody, any person collecting or attempting to collect a debt owed or due or asserted to be owed or due another. And then it says, to the extent such activity meets one of four qualifications. And the one I want to focus on is the fourth. And that applies to somebody who has engaged in activity concerning a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor. And I think the parties agree with the FTC's interpretation of this. This is applying to a situation in which a company like a car dealership has gotten a commercial loan from a bank and put up as collateral the debts that it's owed by its customers, say, car loans. The only circumstance in which that kind of entity is ever going to be collecting on a consumer debt, which is required at the beginning of Clause F, is if they've either foreclosed on the collateral, in which case under the UCC they will send a notice to the consumers saying we have been assigned this debt, start sending the debt to us, and if the consumer asks for it they have to send proof of the assignment. Or if the assignment was given to them at the outset as part of the secured credit transaction. The problem for Respondents is that in either case the bank is only ever going to be doing exactly what a debt purchaser does, which is collecting from the consumers a debt that has been assigned to it and keeping it on its own account. Respondents' only answer to this is to say that this, no, no, this is a provision that is addressed at the bank that is simply holding the debts as collateral. But that can't be right, because at the very beginning of F-4, or F, and Congress made clear that the exception only applies to somebody who is actually collecting or attempting to collect a debt, and somebody who is simply holding a collateral is not collecting or attempting to collect the consumer debts. And as a consequence, adopting Respondents' interpretation that somebody who is collecting on its own account through an assignment, as a debt purchaser does, as the commercial creditor does in the scenario we've just described, on their view, they are not collecting a debt, owed or due another. And as a consequence, they cannot be the person to whom Congress is referring in subsection F-4. It is an exception that not only is completely surplusage and a null set, it's an exception that renders itself surplusage. The beginning of the requirement makes it impossible to satisfy the second set of requirements in F, at the bottom of F-4. Our interpretation is that. Roberts, I understand that argument, and I think you're right. It is one that the Respondent has to address. But going back a step earlier than that, the actual text, I mean, your friend makes the point that your reading gives a different tense to owed than it does to due. You read owed as referring to the past. You read due as referring to the present. And that's unusual. I don't think it's that unusual. I don't think we would be surprised, for example, if this phrase read, debts owed or owing another. In that circumstance, it would be perfectly grammatical, and it would be clear that Congress was concerned about the another, not about the time frame, and that the point of it was to exclude creditors who are collecting debts that they originated themselves. Roberts, owing is not a common word that's used in that context, though. But exactly. That's why Congress would use due. Instead of owed or owing, it used owed or due. And we think that that's certainly a permissible interpretation. And once we reach that point, then it becomes important, particularly when the same phrase is used again in another part of the definition, to adopt an interpretation that, while it may not be the first one that comes to mind the first time it's used, you still need to have an interpretation that allows the same words to do work when repeated later in the subsection. What we have here is, I think fundamentally, is that the word owed is a participle that's ambiguous. It is a participle that can both be a past participle, referring to a prior time frame, or a present participle, referring to the present. This Court encountered a very similar set of words in Robinson v. Shell Oil, where it was trying to decide whether Title VII, which prohibits an employer from retaliating against its employees, whether that meant its current employees or could also mean its former employees. One of the things the Court did, although it recognized that kind of on first blush you would think current employees, is it looked at the statutory interpretation of employee. And there, employee was defined as an individual employed by an employer. So you had individual employed. It's the same structure. A noun modified by a gerund or by a participle that is in the past tense, but could refer either to somebody previously employed or somebody currently employed. And the Respondent in that case made the same argument that Respondent makes in this case, which is that it must refer to somebody who is currently employed. This Court unanimously rejected that assertion out of hand and ultimately went and looked at the use of the word employee elsewhere in the statute and concluded that it can refer to both. And that's all we're asking the Court to do in this case as well, is to recognize Mr. Russell, do you have a few examples, I suspect you've thought of this, just of sentences which use the word owed to mean what you wanted to mean in this case without any other context clues? Well, you can talk about somebody collecting a debt owed another and then the context could make clear that it was a debt that had been paid off for discharge and bankruptcy. Right, but you wouldn't think that, right? I mean, I'm just wondering whether, and I understand that you have your superfluity argument which is, in your view, a kind of context clue, but if you just look at the language, can you come up with any sentence which points toward your reading rather than towards Mr. Shanmugam's? So we've given a couple of examples in our reply brief, and we can speak of somebody who regularly collects debts that are created by somebody else, and in that context I think you could refer to that as a debt owed another. I acknowledge that this maybe isn't the first interpretation that leaps to mind, but I do think that, you know, when you encounter a phrase like this, it's not unambiguous. It can refer to you. Well, usually when we think about ambiguous phrases, you know, we can say, well, you could say this sentence, and then it would mean X, or you could say this sentence, and then it would mean Y. But my problem when I think about this word is that I can never get it to mean what you want it to mean, no matter how I construct a sentence. Well, I give you the example. If Congress had said a debt collector is somebody who regularly collects debts owed or owing another, I think that would be a perfectly grammatical sentence. And Congress might not want to use owing because it is an awkward, archaic use. But I think, you know, when you confront a provision like this, you have to end up looking at the use in both contexts. And the only way to give the clause F any meaning is to interpret it in what might be the less natural way in the first place. It's also a necessary way to interpret the statute to give meaning to the way or to respect the way that Congress has dealt with other assignees, because we recognize that Congress probably didn't have the debt-buying industry in mind when it wrote this statute, but it did have other assignees in mind, and particularly debt servicers. It's common in the mortgage industry, for example, for servicing to be performed by somebody else. And Congress provided in Clause F-3 that somebody who is assigned, somebody who obtains a debt after it has gone into fault is subject to the Act. And that's very common for debt servicers, and everybody agrees that this is a provision in F-3 that's about debt servicers. It's very common for mortgage servicers to obtain assignments of debt after it's gone into a default, precisely because they need it in order to be able to enforce the debt in court, to file a lawsuit, to collect or to foreclose on a mortgage. And respond to this as the case comes to us, we're not addressing the status of Santander as a debt servicer, though. That's correct. But my point here is simply a structural one, and that is that Congress clearly contemplated that some assignees would be debt collectors, notwithstanding the fact that they are collecting a debt assigned to them by somebody else, which is all that a debt purchase is, it's an assignment of the debt for value. And Congress said that if a mortgage servicer is assigned a debt after it's gone into default, Congress intended for them to be treated as a debt collector. But under Respondent's view, that actually isn't going to be what happens, because a mortgage servicer, as soon as they obtain an assignment, under their view, they're collecting debt owed and due themselves, not owed and due another. And so we end up with a situation where the Clause F-3 provision actually only applies to a mortgage servicer who has a contract to collect a debt, but not if they've been assigned to the debt. And they're particularly likely, as I mentioned, to be assigned a debt if they obtain it after default, because they need to have that assignment in order to do the things that their customer wants them to do for them, which is to file a lawsuit. Alitoson I don't see a problem with F-3. The party is attempting to collect a debt owed or due to someone else, and it concerns a debt which was obtained, and if obtained, it doesn't mean owed. You can obtain a debt that you don't own. I don't see any problem with F-3. So there's two problems with that. I disagree with that reading of obtained. I don't think it's a very natural interpretation of it. But what it means that, I think the reading you're suggesting, is that an assignee, a debt servicer who has an assignment, would not be covered if they are assigned that debt after default. And I think that does quite a bit of violence to how Congress intended the statute to operate. And there's no reason for Congress to have thought that it made a difference with respect to the risk that a servicer poses to consumers, whether they have been simply hired on a contract to collect the debt. Alitoson Why would they not be covered if they acquired the debt before it went into the debt? I'm sorry, after it went into default. They would be collecting a debt owed or due to someone else, and they acquired the debt after it went into default. Therefore, they don't fall into 3. O'Connor Well, in Respondent's view, somebody who is collecting on an assignment is collecting a debt that is owed themselves. So if the suggestion is that an assignee is not collecting a debt owed itself. Breyer Where did they say that? I mean, I thought the 4 is Mr. Smith owes some money to a company, Jones. And Company Jones assigns the debt to a servicing company. All right? And so servicing company might have been said, might be said, you can use it this way, they obtained the debt from Company Jones. And so somebody might say that this assignee is collecting a debt from Smith that Smith owes another, namely Jones. But we don't want to cover them in this statute. We don't want to cover that kind of debt collector. So they write 4. And the same is true of 3. They write 3 because they don't want mortgage servicers to be falling within the statute, unless, of course, the mortgage servicer is serving a dead mortgage. And why shouldn't they? All right? Now, that reasoning doesn't seem to me illogical. On the other hand, if we take your reasoning, you have to interpret this is, so I was thinking of examples, and I thought, well, what about one of these companies that goes and buys up other companies, turns them around, and sells them? When they buy a company, they buy the receivables. And while they own the company, they're going to collect the receivables. And so there they are. You see? On your definition, those receivables were once owed the company that they're bought. So on your definition, that whole category of people falls within the definition. So it seems to me, although you point to problems, they're not insuperable problems with the word obtained. Well, if I accept your definition of is, I get into a lot of difficulties. Now, that was where I'm not saying that's my final view of this. I'm just saying, how do you respond? So let me address your difficulties, and then let me explain why I think the problems on the other side are greater than you seem to think that they are. The difficulties arising out of mergers or buyouts of a company, I think, are completely separate from the issues here. It's a question of whether you would treat the company that buys another company or merges with another company as obtaining the debt, or as simply a change in the legal title of the owner of the debt. In addition, subsection 6B specifically addresses companies that are collecting debts that are owed to affiliate companies, and I think that that's probably also a solution for that problem. I think when you are talking about trying to minimize the problems on the other side, you seem to be operating on the assumption that it's possible to say that somebody who has an assignment of a debt, say a servicer, is not collecting a debt owed or due another. Or is, I'm sorry, is collecting a debt owed or due another. And we know that that's not right for two reasons. One, textual specific to this statute, and the second is how assignments are understood to operate in the law generally. First, if you look at the creditor definition, which is on page 2A, Congress defined creditor to include the person to whom the debt is owed, and then it created a special exception for assignees, particular kinds of assignees who are assigned the debt after it is put into default. That assignee exception would be unnecessary unless Congress understood assignees generally to be collecting a debt that is owed to them. And that is consistent with the way assignments work in general. So for example, Article 3 of the UCC talks about negotiable instruments, and it makes a distinction between the person entitled to enforce the negotiable instrument and the owner of the debt. And it's the person entitled to enforce, the pete, who has the authority to insist on payment, and if payment isn't delivered, to sue on the payment and to collect on it, and the pete is the person, if you pay them, the assignee. If you pay them the debt, it's extinguished, even if they don't pass that money on to the person that hired them to collect it. So a servicer with an assignment is the person to whom the debt is owed in any meaningful sense, as Congress recognized. And if that's so, then I don't think, and I think they do have a serious problem with respect to F-3, with respect to F-3. Alito, why do we have to get into assignments at all? Alito, all it's needed to defeat your argument with respect to 3 is to think of a situation in which a person or an entity is collecting a debt owed to another, and that person or entity obtained the debt at a time when the debt was not defaulted. And that, it's very easy to think of a situation like that with respect to the classic debt collector that does nothing but collect other people's debts. If obtained means getting that debt for collection. So your answer is that's not a reasonable definition, that's not the right definition of obtained. So that's what it comes down to, right? I have a couple other responses. One is that's not a solution to F-4, to be clear, because No, I'm talking, I'll take them one at a time. Okay, sure. So with respect to F-3, the other problem is that it ends up, the result is that servicers with assignments are not covered by the statute at all, but servicers with contracts are. And that's a very odd situation to think that Congress intended servicers who are simply hired to collect a debt are, if the debt is in default, they're covered by the statute. But if they're given an assignment in order to facilitate that debt collection, which is very common when the debt is in default already, they're not covered because they are collecting a debt that's owed and due themselves, not another. In addition, I don't think, to the extent, you know, we're looking at what Congress was trying to do here, Congress thought that F-3 was dealing with servicers who they thought was a different category of people who required different treatment. There's – but as you just explained, Justice Alito, that interpretation necessarily means that any debt collector who is hired to collect a debt before it goes into default, when it's merely delinquent, which happens a lot, is entitled to this exception, and they escape regulation entirely. And there's nothing in the legislative history, and there's nothing in the reasons people give for why third-party debt collectors are covered by the statute, which would lead Congress to want to provide them that exception. I would say, in addition, you know, obtained is also used in the Clause 4 exception. And as I said, it's used in a way there that cannot be referring to somebody who simply has a contract. Alito, I'm not sure I understood what you said. So let's say your company is owed a debt by other people, other people owe the company a debt. They get a loan, they give the party extending the loan a security interest in that debt, and now there's an effort to collect that debt. Who is owed that debt? Is not – is it not still owed to the original party? It's not owed to the person with the security interest, is it? So if – just to be clear about the hypothetical, the debt hasn't been – the security interest hasn't been foreclosed on? Yes, right. So at that point, it's the borrowers, the car dealership, in my example, who's owing the debt, not the secured party. And the Clause F exception only applies to the secured party, right? It says, obtained, concerns a debt which was not in default at the time it was obtained – I'm sorry, I'm reading on provision – concerns a debt obtained by such a person as a secured party in a commercial credit transaction. So it's only the bank. And the only circumstance in which the bank is going to be collecting from the consumer is if the security interest has been foreclosed upon. And it's also important – so you could say in that circumstance, well, maybe the bank is trying to collect from the commercial borrower, from the car dealership. But debt is a defined term in the statute, and it only applies to consumer loans. So the only time under F-4 any person will be collecting a consumer loan as a secured creditor is when they have obtained an assignment of that loan as a result of either foreclosing on that loan because of default or because it was assigned to them in the first place. But in either case, they're doing exactly the same thing as a debt purchaser. They are collecting a debt on their own account that was originated by somebody else and assigned  Aliton, Jr. Well, the situation – I mean, it's possible to think of situations that would fall within that. It may be that they're not things that are – they're not situations that are very likely to come up in the real world. But the strength of your – I mean, the degree of absurdity that you have to show under F-4 depends on the ambiguity of the phrase, do, owed, or due. And I think that's not just not the first way you'd read that. It's not the 50th way you would read that. It's just you're fighting – you're really going uphill on that. You need something really strong to overcome that, I would say. Well, taking that, I'm unlikely to change your view about that. I think we have identified something pretty strong, because we now have a provision that renders itself surplusage. You know, it's as if Congress has enacted a statute that regulates taxis only to the extent they're driven by poodles, right? The first set of requirements cannot be met in any situation. The second set of requirements, then diagrams with circles that do not touch. And I think that that is a very serious problem. At the same time, you know, in interpreting the ambiguous language of the statute – and, you know, if you don't think it's ambiguous in either provision, I don't know that I can do much beyond trying to dissuade you of that. But, of course, if you do think that there's some room for interpretation here, I think it's important to look at the underlying purposes of the statute and the way that Congress has treated other similarly situated entities. And the fact is, a debt buyer is much more like a debt servicer with an assignment, which I think Congress clearly intended to be treated as a debt collector when it had pained that assignment after the debt was involved. Roberts' You don't dispute, I take it, that this particular context with this particular type of entity is not what Congress had before it when it passed the law. I think the industry has evolved in a way that has raised these sorts of questions. This is not something that Congress was addressing. I don't think it had this specific industry in mind. It did, though, have assignees in mind. And all a debt buyer is is somebody who has purchased an assignment, as opposed to having been given one as a servicer to facilitate collection. And I don't think that there's anything in the language of the statute that distinguishes between them, because in both instances the assignee is the person to whom the debt is presently owed. Breyer's It's true about assignments. I take your – I understand your point on assignees, I think. Now, look at 4. Where is the word assignment? It's not there. And what they're talking about is a person who takes a secured interest in the debt, I suppose. Or he lends some money to the creditor, and in return he takes some kind of secured interest. Doesn't really say what kind. And as part of that, the initial creditor might assign him the original debt. It might not. And what you've said is, oh, they almost always do. Do they? I don't know that. How do we know that? I mean, I remember vaguely commercial transactions, and I remember that there are all kinds of secured interests. You could take a secured interest in a car. You could take a secured interest in their house. You could take a secured interest in all kinds of things. So where did you get this idea that, in fact, a creditor with a secured interest who has taken — it didn't say assignment. But now — so where did this come from, that we're only talking about assignees? And it's important, for if we're not always talking about assignees, but only some of the time, you can't raise your objection, except to a subset of the Section IV people. And if you were talking about a subset, assuming you're right, no one writes statutes perfectly. You'll always under-include or over-include. So let me turn you back to the language of the provision, because I think ultimately you don't need to know that much about commercial credit transactions to be persuaded of our point. The beginning of F makes clear that all the Clause F exceptions, including F-4, only apply to any person collecting or attempting to collect a consumer debt, right? And so then you have to ask yourself, under what circumstances? And then 4 only applies to the secured party, the bank, right? It concerns a debt obtained by such a person as a secured party. So it's only ever going to be the bank. And so you ask yourself, when will a bank be collecting on a consumer debt? And the only circumstance that anybody has proposed is when they've either been assigned the debt or it's been foreclosed. Very able counsel on the other side has not been able to come up with any of the examples that people seem to think might be out there. Ginsburg. Ginsburg. Mr. Kessler, before you sit down, you did make an alternative argument based on 1692A6. That is, you say, whatever else your person here regularly collects or attempts to collect debts owed or due to another, that's part of its business. And then it also is a purchase of a debt. I think you're making the argument that if, through the servicing that you described, part of their business is that they are regularly collecting or attempting to collect debts owed to another, then even as to transactions that don't fit that type, that they are the creditors themselves, their whole business gets stamped with debt collection. Is that right? That's correct, because the main definition looks at the business model, if you qualify by virtue of your servicing third-party debt as a debt collector, you're subject to the act under the substantive provisions with respect to all your collection activities subject to the Clause F exceptions. And that's an important point in response to their argument that Congress couldn't possibly have intended to regulate financial services industry. But you didn't, you didn't, the court of appeals didn't agree with you, and you didn't raise that as a question. We did not raise that as a separate question. I do think, because it is a predicate to resolving the question presented, it's fairly before you. But regardless, it is an important point about why their argument that the financial services industry couldn't have been intended to cover it. I read that part of your brief. You said it's a predicate. It's necessary. I don't understand why it's a predicate at all. We can fully answer the question presented without getting into that in any way. I think it's an important part of our structural argument about why their interpretation of owed or due another is not, cannot be correct, because they say the financial services industry is not what Congress had in mind here. And we make the point that, look, on a plain reading of the text, even under their interpretation of owed or due another, financial services providers are covered. If I could reserve the remainder of my time. Roberts. Thank you, counsel. Mr. Shanmugam. Thank you, Mr. Chief Justice, and may it please the Court. The sole question presented by this case is whether an entity that purchases debts and then attempts to collect them for its own account qualifies as a debt collector under the FDCPA on the ground that it is regularly attempting to collect debts owed or due another. The answer to that question is plainly no, because such an entity is attempting to collect debts owed or due itself. Now the question is whether an entity that purchases debts and then attempts to collect them for its own account qualifies as a debt collector under the FDCPA  on the ground that it is regularly attempting to collect debts owed or due itself.  to collect debts owed or due itself. So let's assume that the principal business of your client is to collect debts that are owed to others. Would your position be that they are exempted from the act simply because this debt they owe? No, we would not contend that, Justice Sotomayor. Sotomayor, if your client, if they had pleaded right and proven that the principal part of your client's business was debt collection of debts owed to others, you would be covered. So Petitioners concede that we do not fall within the principal purpose definition. And I would note parenthetically that the principal purpose definition applies to any entity the principal purpose of whose business is the collection of any debts, regardless of to whom those debts are owed. I would also note parenthetically that to the extent that Mr. Russell advances an alternative argument, this argument concerning Santander's alleged servicing activity, that that's also an argument under the provision at issue here, namely the regularly collects provision. And with regard to the language of the regularly collects provision, I don't think that Petitioners really dispute that ours is the most natural interpretation of that provision. As I understand Petitioners' arguments, both in their briefs and now at oral argument today, they're really making two principal arguments. The first is this argument concerning the exclusions, that our interpretation somehow renders certain exclusions from the definition of debt collector nonsensical. And the second is a policy argument, an argument that if Congress had focused on this issue, Congress would have wanted to regulate debt purchasers as well as dedicated debt collectors and servicers. And I hope over the course of this argument to cover both of those points, but let me go directly to this point concerning the exclusions, because I think that really was the focus of Mr. Russell's argument this morning. We believe that our interpretation not only gives meaning to those exclusions, which is all that's really required, but actually gives those exclusions Congress's intended meaning. And let me start with the exclusion in Clause F-4, which got comparatively little treatment in Petitioners' opening brief, but now appears really to be the center piece of Petitioners' argument. We believe that that exclusion has meaning and indeed has Congress's intended meaning with regard to a type of financing to which Mr. Russell alluded, so-called accounts receivable financing. And these are circumstances in which a secured party could attempt to collect on debts even before they foreclose on the collateral, because, of course, once a secured party forecloses on the collateral, it is essentially in the same position as a debt purchaser. Let's take Mr. Russell's example. Let's suppose you have a situation where a car dealership, let's call it Sam's Cars, comes to my client, Santander, and says, we'd like to borrow some money. And Santander says, in response, fine, what are you going to put up as collateral? And Sam's Cars says, we're going to put up these accounts receivable that we have. And we're going to give you, Santander, the entitlement in order to pay off this loan to collect some or all of the money owed on those accounts receivable. In that circumstance, Santander certainly could be said to have obtained rights in the debt, but the debt is still owed or due Sam's Cars in the relevant sense. It's still owed or due Sam's Cars because in that circumstance, the creditor retains an interest in the accounts, or retains the right to demand payments on those accounts as well. And this is a situation that Congress seems to have expressly contemplated, and for those members of the Court who are interested in legislative history or might be tempted to be interested in legislative history, I'd point to the Senate report at page 4 where it says that this exemption targets, quote, the collection of debts owed to a creditor when the creditor is holding the receivable account as collateral for commercial credit extended to the creditor. And so Congress seemed to contemplate a circumstance in which the secured party would be engaged in collection activity even before it foreclosed on the collateral. And if you take a look at the sources cited in footnote 4 of Petitioner's reply brief, I think Petitioner has essentially acknowledged that this was a type of financing that is contemplated and that is potentially covered by this exclusion. And the very sources that Petitioner cite in the Uniform Commercial Code, again, contemplate the possibility that the secured party could be taking action even before default and foreclosure. And in particular, I think I might not have this right, but I think that they're replying to that is what happens in the situation that you mention is that the initial creditor who sold the car, whatever, and they're going to give as collateral that. They get the person who takes the collateral, say, Santander, takes an assignment of the debt. And they're saying taking an assignment of the debt, once that happens, it isn't true that the car buyer owes anything to the car dealer, but if I've got it right, good bet, maybe, maybe not. But if it's true, that's true, then he is not collecting the debt for another. Am I right about what you think his reply is? Well, I think that that is Mr. Russell's reply. And Mr. Russell really fixates on this concept of assignment. But as you pointed out and as Justice Alito pointed out, assignment is neither here nor there with regard to this exclusion. The concept of assignment appears only once in the FDCPA, that is, in the assignee exclusion to the creditor definition, which I think both sides acknowledge is not dispositive of the inquiry here.  And I think that when Congress used the word obtain, in both of these provisions, it was contemplating the full panoply of arrangements where an entity could obtain something less than full ownership. And so to move to Clause F-3, and I think the analysis is analogous under both clauses, there are all sorts of ways in which an assignment can be obtained. Excuse me, a servicing arrangement could be structured, and one of the ways in which it could be structured is through a so-called assignment for collection, the type of arrangement that this Court considered, albeit in a quite different context, in the Sprint Communications case, where you have the original entity retaining equitable title but passing legal title to the entity that engages in collection. And so if a servicer had legal title but not complete title, the servicer would, of course, come within the exclusion. And so, again, we think that with regard to both of these exclusions, we're really giving these exclusions their intended meaning, because Congress wanted to ensure that where you have a servicer or where you have a secured party that engages in collection activity when either of those entities has not acquired full ownership, that there is an exemption from the statute. In the context of servicers, that exemption only applies to pre-defaulted debt, but in both circumstances, the exclusions have meaning. And that's really all that is required when the by far the more natural reading of the relevant statutory provision is ours. And I do want to take just a minute to address that provision, because we shouldn't lose sight of it, because after all, it's what this Court has been asked to interpret. I want to go directly to the hypotheticals that Mr. Russell has offered today, and they're hypotheticals, both of which appear in his reply brief, and explain why the language of those hypotheticals differs in critical respects from the language that we have here. The first is the hypothetical, and these are both at page 4 of the reply brief, of a statute that refers to a person who regularly creates debts created by another. Now, of course, as we argue in our brief, we believe that the grammatical way to express that view would be to say a person who regularly collects debts that had been created by another. But even if you didn't agree with that, I think that hypothetical is distinct in a very important way. The act of creation is a discreet act, and it's an act that of necessity has to have taken place in the past. It would be very odd to talk about regularly collecting debts as they are being created you would necessarily think, well, that debt had been created at some prior time. The word owed, by contrast, refers to the status of a debt, and the current status of a debt may be very different from the status of the debt at an earlier time. And so that language, again, I think is very different from the language we have here. With regard to Mr. Russell's other hypothetical, the hypothetical of a statute that covers a person who regularly collects debts owed or owing another, we explain in our brief that owed and owing are words that are essentially used synonymously and have come to have the same meaning. And so I do think that that would be a circumstance in which Congress could be using a doublet that is essentially superfluous, much like a phrase like aid and abet or cease and desist or null and void and many other examples that this Court has cited in the past. But, again, even if you disagreed with that, the only reason why you would be saying that owed refers to a different tense is in an effort to give meaning to that word. By contrast, here, we have a phrase, debts owed or due another. Again, we don't think that there's much difference in meaning, if any, between the words owed or due, and, indeed, those words often appear together in various permutations, both in other statutes and at common law. It may very well be that the words have a subtly different meaning, because, as we explain in a footnote of our brief, it is possible to talk about a debt being owed but not yet due. And so if I receive a credit card bill from my credit card company and it says that I have to make a payment by May the 15th, that debt is, indeed, presently owed, but not yet due. But what you can't get from this statutory language, and, again, even if you agreed with 98 percent of Mr. Russell's argument, I don't think you can get over the last 2 percent. You can't get from the statutory language the fact that owed and due refer to different points in time. In other words, under Mr. Russell's interpretation, it would be as if the statute reached any person who attempts to regularly attempts to collect debts that had been owed or are due another. And the reason why Mr. Russell puts those two terms into different reference points is simply because if both of those terms referred back to the point of origination, you really would have a superfluity problem with the statute. At that point, you would render the originator exclusion in Clause F2 wholly superfluous. But the problem with the interpretation that Petitioners now proffer is that, again, you have to take this additional step of having these two words refer to different points in time. And even if you thought that the use of the word owed could refer to two different points in time, you wouldn't be able to take that additional step of saying that due refers to a different time from owed. Kagan. Kagan. Mr. Shanmugam, it doesn't make much sense, though, does it? I mean, take this very case. So your client serviced this debt and counted as a debt collector at that time. And then your client purchased the debt, and all of a sudden is not a debt collector. And I guess the question is, what happened in between the time when your client serviced the debt and the time when your client purchased the debt that in any way changed its relationship with the borrower such that Congress wouldn't be concerned any longer with its behavior? So, Justice Kagan, we don't concede that simply by virtue of the fact that we serviced Petitioner's debt and certain other debts involved in this case, that that was sufficient to render us an entity that regularly collects or attempts to do that. But I'm happy to assume that for purposes of the question. The relevant inquiry is whether we were a debt collector at the time of the alleged violation. If you take a look at the substantive provisions of the FDCPA, provisions like 1692e and f, they're all keyed off conduct engaged in by an entity that is a debt collector, and I think the fair inference is that you have to be a debt collector at that time. And notably, at the point at which we acquired essentially the remainder of Citi's auto lending business, we really stepped into Citi's shoes in a practically significant way. At that point, we took over the business, and it was as if we were the original creditor. And while this is not in the record, I hope the Court will permit me one liberty, when we sent out notices to borrowers, we obviously sent out those noticers in notices in Santander's own name. And at that point, it was as if we had all of the same incentives as the originator of the debt. We certainly had an incentive to insure payment, but we also had an incentive to maintain a business relationship with those customers. And so to the extent that Robertson Why is that? I mean, you're an entirely different business than the person whose shoes you step. I don't see that, and they've already got the loans, I don't see why you have the same incentives to maintain their goodwill. Well, I do think that we would have incentives to maintain their goodwill in the way that the sort of fly-by-night debt collectors that Congress was seeking to target 40 years ago, when it enacted the FDCPA, didn't. We could have an incentive to try to market other financial products to their customers. And again, the only sense in which we were different from Citi was that, first, as you say, we didn't originate the loans, and second, we, again, stepped into the shoes of the relationship at a later time. But to the extent that this argument really goes to the broader policy arguments that Petitioners are making, and I think Petitioners rely on the fact that we were previously servicers kind of as a door into those policy arguments, again, we don't think that if Congress had focused on debt purchasers, it would have been concerned about entities like Santander precisely because of the debt collectors. Sotomayor, you don't think that the definition of creditor and excluding only those who have bought debt that's not in default gives you a sign of who they're concerned about? So I think both sides now recognize that the question of whether or not Respondent is a debt collector doesn't in any way depend on the question of whether or not Respondent falls within the definition of creditor or not. Those two provisions operate perpendicularly. But I would say that with regard to the definition of creditor, we believe we would plainly fall within the definition of creditor because we would be a person to whom a debt is owed. Indeed, as you'll be aware, Justice Sotomayor, in our brief, we rely on the fact that that definition is expressly framed in the present tense as yet another textual cue as to why our interpretation is correct. I think with regard to the assignee exclusion from that definition, I think that the one thing I would say is that Petitioners go to great length to suggest that we would fall within that exclusion. But I think that the gymnastics that Petitioners have to go through are much greater than any gymnastics we have to go through to justify our interpretation, because if you take a look at page 49 of Petitioner's brief, they argue that we would fall within the assignee exclusion, which refers to a person who receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another, to reach even a situation in which an entity is collecting a debt for itself. Their argument as to why we would fall within that exclusion is that we would be standing in the shoes of the originator, and therefore, when we are collecting the debt for ourselves, we are collecting the debt for another, in other words, for an entity other than the originator. And so to the extent that Congress included that exclusion, it works perfectly well under our interpretation. This Court need not address the definition of creditor, because again, the parties both acknowledge that the definition of creditor sheds little direct light on the interpretation of the definition of debt collector. But in our view, the assignee exclusion in that definition covers situations in which you have either a sham transaction or a situation in which the assignee in fact obtains full title to a debt but has a contractual obligation once it collects to pay that money back to the counterparty, to the transaction. There's nothing about that exclusion that suggests any intent on Congress's part to reach debt purchasers. And I think everyone acknowledges that Congress was not focusing on debt purchasers in 1977. There's no direct reference to debt purchasers in any of the legislative history of which we are aware. And really what Petitioners are asking this Court to do is to extend the definition of debt collector to debt purchasers based on these sorts of policy considerations. And just to put the point of view of the Court, I don't think that's a good argument. What about the argument that was not made part of the question presented? It's, what is it, 1692A6, the not the principal place of business, not the principal business, but what was the language? Yes, Justice Ginsburg, this is the argument. Regularly, yes. Regularly, the argument, as I understand it, is that one who regularly collects or attempts to collect debt is owed to another. But this particular category that we're dealing with, this person who regularly collects or attempts to collect, is a creditor himself. That doesn't matter, because if he regularly collects or attempts to collect for another, he is stamped a debt collector, and everything that that debt collector does will be. So, Justice Ginsburg, we acknowledge that the question of whether an entity falls within the regularly collects definition requires an inquiry into the entity's overall practices. But what Petitioners are attempting to do is to inject a quite different theory, both legally and factually, as to why we satisfy that definition into this case. If you take a look at the question presented in the petition, the question presented focuses on whether a company, and I'm quoting from Roman numeral I, whether a company that regularly attempts to collect debts it purchased after the debts had fallen into default is a debt collector subject to the Act. Petitioners' alternative theory is that we somehow fall within that definition because of our servicing activity. And in particular, Petitioners point to one of our SEC filings for the proposition that we engage in other servicing activity, namely, servicing activity of other debts for other entities. Now, that's not within the scope of the question presented, and as Petitioners acknowledge in their reply brief, that argument was not made in the body of the petition, nor was that the argument that Petitioners made in the lower courts. If you take a look at both the Fourth Circuit's opinion and the briefing in the Fourth Circuit and in the district court, I think that the most that can be said about Petitioners' argument is that they made an argument along the lines of what Justice Kagan suggested. They made an argument that by virtue of the fact that we serviced the very debts at issue in this case, that there would be something inequitable as a policy matter about saying that by virtue of that servicing activity, we're now no longer within the scope of the statute. I think what Petitioners are trying to do here is quite different. They're attempting to make an argument that by virtue of, again, our other servicing activity, that is sufficient to bring us within the ambit of the definition. And there is no allegation in the complaint, which you can see for yourself in the joint appendix, to that effect, and that has never been Petitioners' theory in this case. And I would make one parenthetical note about that. Even if you thought that as a court of first view, you could somehow take judicial notice of these SEC filings or anything else in an effort to bolster this now long forfeited argument, the relevant inquiry for purposes of the definition of debt collector concerns our activities at the time we engage in the alleged violations, as I noted earlier. Those violations are alleged to have taken place five years ago, and I can represent to this Court that Santander's business was in some respects very different, and in particular, Santander had much less servicing activity in 2012 than it does today. All of this, of course, would be a matter to be alleged in the complaint if that were, in fact, Petitioners' alternative theory as to how we qualify as a definition of debt collector. And Petitioners had every opportunity in every court along the way to advance that theory, and yet they put all of their eggs in one basket when they came to this Court and attempted to argue that we qualify as a debt collector solely by virtue of our purchases, and under the more natural interpretation of the relevant statutory language, such purchasers do not count toward whether or not an entity is engaged in regularly collecting debts owed or due another. But wouldn't we, assuming we agree with you, have to leave open that in the question of the character of the business, the sixth definition? It's true it's not raised before us here, but there might be another person similarly situated who wanted to ride with that argument. Justice Ginsburg, I think that that is an issue that could be raised in another case. Our submission is simply that it can't be raised in this case because it has been forfeited. And entirely contrary to the argument that Petitioners make in their reply brief, they seem to suggest that this is something that we're advancing as an alternative ground for affirmance. That is not correct. This would be an alternative ground for reversal. If you were to give Petitioners another bite at the apple to pursue this theory, you would have to vacate the judgment of the court of appeals and remand on that ground and allow Petitioners at this late stage in the litigation to amend their complaint in order to provide factual support for that argument. And I'm certainly not aware of any precedent for this Court giving a litigant that opportunity when they have had every opportunity to do so in the lower courts that have not pursued that theory. At the point at which we moved to dismiss in the district court on the ground that Petitioners had not satisfied the element of liability, that we be a debt collector, that was the point at which you would expect Petitioners to seek leave to amend if they wanted to pursue a theory not within the four corners of their complaint. And they conspicuously did not do so there, nor did they ask the court of appeals for that opportunity.   I'm not sure that the alternative argument that we collect, it would have to be a debt owed to, what are the magic words? Well, first tell me, am I right that the alternative argument that was not raised here was raised? I actually don't think that it was raised below or passed upon by the court of appeals. I think the most that can be said about the court of appeals' opinion is that it passed on what is effectively a policy argument, though it has a factual premise to it, namely this argument that by virtue of the fact that we serviced this relatively small number of debts at issue, that there would be something inequitable about saying that we are no longer a debt collector once we have acquired those debts. That's the argument that the court of appeals is addressing at pages 18a to 19a of the petition. Now, I will note one thing about the court of appeals' opinion. I think that there is some language in that carryover paragraph that seems to suggest that the question of whether or not an entity is a debt collector focuses on the particular debts at issue. And I think we would respectfully acknowledge that that's not quite correct. Under either the principal purpose definition or the regularly collects definition, you certainly have to look at the entity's overall operation. And as we explain in our brief, the question of whether a certain type of activity is sufficient to give rise to regular collection has been the subject of some discussion in the lower courts. We think that the better view, though this relies largely on district court opinions because there is very little circuit authority on this, is that in assessing whether an entity regularly collects debts owed or due another, you have to look at those debts in relation to the entity's overall collection activities and determine whether that collection activity is a substantial part of the entity's overall collection activities. But that is an issue that would have to be resolved if Petitioners had relied on this alternative servicing theory below. And I would submit that this Court, if it were to give Petitioners another opportunity to pursue that theory, would probably have to say something about that or at a minimum leave that issue open for the lower courts. And of course, our broader submission with regard to this alternative theory is that it was not preserved before this Court at the cert stage, nor was it preserved in the lower courts. I see that my yellow light is on, so I just want to say one last thing on this issue of the policy arguments, because I certainly don't want the Court to be left with the impression that if Congress had focused on this issue, it surely would have wanted to bring debt purchasers within the scope of the statute. Petitioners raised this suggestion of horribles, that there are various diversified financial institutions that are moving into the secondary market for distressed debt. I simply don't think that that's true as a factual matter, and I would encourage the Court to look at the secondary sources that Petitioners cite for that proposition at page 9 of their opening brief and page 16 of their reply brief. There simply is no evidence that the Goldman Sachs's and the Blackstone's of the world are suddenly engaging in the business of debt collection. But the problem with Petitioners' interpretation is that it really would sweep in entities like Santander. And again, if you take a look at the transaction at issue here, what Santander was doing was not buying distressed debt on some secondary market. It was engaged in an arm's-length commercial transaction where it essentially acquired the entirety of Citi's auto lending business, both non-defaulted and defaulted debts, and so in a very real sense, stepped into Citi's shoes in that regard. And so while this may not have been a transaction of the sort that Justice Breyer posited, where you have an entity that's truly a successor in interest, it's a pretty close cousin to that sort of transaction. Sotomayor, is Citi out of business? It's no longer writing debts? My understanding is that Citi is very much still in business, but it's not in the auto lending business, and that Santander, in two separate transactions, acquired somewhere in the neighborhood of $6.5 billion worth of auto loans. Citi, like many other large lenders, essentially got out of the auto lending business in the wake of the last financial crisis, and Santander acquired this entire portfolio. And so this case really illustrates, I think, why Congress may not have wanted to bring debt purchasers, or at least all debt purchasers, within the ambit of the statute. And again, if you take a look at the secondary market for distressed debt, which is a very large market, most of the purchasers on that market would qualify as debt collectors under the principal purpose definition. Thank you. Roberts. Thank you, counsel. Two minutes, Mr. Russell. Thank you. So let me end by responding to the Respondent's last point. We know that Congress would have intended to sweep these financial services companies into the coverage under the Act, because it did. That's our alternative argument, explains why, so long as these companies are also servicing debts for others, they are subject to the Act. They are debt collectors, subject to the Clause F exception. So when they acquire a portfolio debt, the Clause F2 exception, or F3 exception, exempts them with respect to all portfolio debts that were current at the time that they obtained them. Justice Kagan, we give examples in page 4 of our reply brief of abuses, one of which is an applicant who discloses every debt owed by a foreign creditor, which I think would be ambiguous with respect to whether it's owed in the past or owed in the current time frame. And I think it's important here to keep in mind, let me return to Clause 4 just for a second. Respondent's only argument, which is a new one that they've thought of in the interim before filing the brief and doing this oral argument, is that 4 is about a circumstance in which somebody is collecting a debt based on collateral. These are sometimes called notification and non-notification accounts receivable financials, financial lending. Justice Breyer, I'm afraid I'm going to ask you to actually look at the UCC and to look at how these things are done, because they're always done through an assignment. They're an assignment of the debt up front, and as a consequence, the person, the lender is always collecting the debt on the basis of assignment, on its own account, exactly like a debt purchaser. Their proposed solution to F-4 simply doesn't work, and nobody has been able to come up with a circumstance in which F-4 has any work to do or makes any coherent sense on Respondent's and definition of owed or due another. Last point I would like to make is their interpretation allows quite easy evasion, even by third party debt collectors who we know Congress wanted to get at. It allows, as I discussed with Justice Alito, a third party debt collector to evade the statute so long as it is hired to collect the debt before the debt goes into default, even once it's delinquent. It allows a servicer, who would otherwise be covered by the Act because they obtained the debt in default, to avoid it so long as they simply receive an assignment of the debt for collection purposes, because somebody who has assigned the debt is collecting a debt owed and due themselves, not owed and due another, and we don't think that Congress could have intended that. And even with respect to a small number or the smaller number of third party debt collectors who are not falling under the principal purpose clause, can I finish? All they have to do is change their contract with their customer to arrange for a purchasing of the debt that they have been hired to collect and arrange to give back 60 percent of what they collect by virtue of that assignment, and they would evade regulation as well. Roberts. Thank you, counsel. The case is submitted.